PUBLIC VERSION

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **IMPULSE DOWNHOLE SOLUTIONS LTD.,**<br><br>  Plaintiff,<br><br>v.<br><br>**TERCEL OILFIELD PRODUCTS U.S.A., LLC d/b/a RUBICON OILFIELD INTERNATIONAL d/b/a LOGAN OIL TOOLS,**<br><br>  Defendant. | **CIVIL ACTION NO.: 6:19-cv-378-ADA**<br><br>**JURY TRIAL DEMANDED** |

## RUBICON'S RESPONSE TO IMPULSE'S MOTION TO EXCLUDE THE TESTIMONY OF RUBICON'S EXPERT MR. VOLLMAR

PUBLIC VERSION

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1
II. LEGAL STANDARDS ..................................................................................................... 1
III. MR. VOLLMAR'S TESTIMONY SHOULD BE ALLOWED ................................................ 3
IV. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cty., Miss.*,
    80 F.3d 1074 (5th Cir. 1996) ................................................................................................3

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
    No. 1:16-CV-00453-RGA, 2019 WL 4194060 (D. Del. Sept. 4, 2019) ............................7, 8

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) .............................................................................................6

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds by Williamson v.
    Citrix Online*, LLC, 792 F.3d 1339 (Fed. Cir. 2015) ............................................................8

*Burleson v. Tex. Dep't of Criminal Justice*,
    393 F.3d 577 (5th Cir. 2004) ................................................................................................3

*Chico's Fas, Inc. v. Clair*,
    No. 2:13-CV-792-FTM-38DN, 2015 WL 3496003 (M.D. Fla. June 3, 2015) ....................4

*United States v. Cooks*,
    589 F.3d 173 (5th Cir. 2009) ................................................................................................2

*Daubert v. Merrell Dow*
    509 U.S. 579 (1993) ..........................................................................................................2, 3

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018) .............................................................................................10

*Harris Corp. v. Ruckus Wireless, Inc.*,
    No. 611CV618ORL36KRS, 2013 WL 12155458 (M.D. Fla. Jan. 16, 2013) .......................4

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010) ...............................................................................................3

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
    No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ...............................................11

*Kopf v. Skyrm*,
    993 F.2d 374 (4th Cir. 1993) ................................................................................................3

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..............................................................................................................3

*Kyocera Wireless Co. v. President Elecs., Ltd.*,
  179 F. App'x 53 (Fed. Cir. 2006) ...................................................................................8

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................4, 5

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) .....................................12

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) ...................................................................................3

*PerdiemCo, LLC v. Industrack LLC*,
  No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) .............................4

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
  No. 215CV01366JRGRSP, 2021 WL 662238 (E.D. Tex. Feb. 20, 2021) ................................6

*Pipitone v. Biomatrix*,
  Inc., 288 F.3d 239, 244 (5th Cir. 2002) ...................................................................................2

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ...................................................................................4, 5

*Rushing v. Kansas City S. Ry. Co.*,
  185 F.3d 496 (5th Cir. 1999) ...................................................................................2

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
  No. CV 17-1734-RGA, 2021 WL 982729 (D. Del. Mar. 16, 2021) .......................................12

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009) ...................................................................................9

*Union Carbide Corp. v. Am. Can Co.*,
  724 F.2d 1567 (Fed. Cir. 1984) ...................................................................................8

*Wordtech Sys., Inc v. Integrated Networks Sols.*,
  Inc., 609 F.3d 1308, 1319 (Fed. Cir. 2010) ...................................................................4, 5

<u>Rules and Regulations</u>

Rules of Evidence
  Rule 702 ...................................................................................1

# DEFENDANT RUBICON'S OPPOSITION TO PLAINTIFF IMPULSE'S OPPOSED MOTION TO EXCLUDE THE TESTIMONY OF RUBICON'S EXPERT MR. VOLLMAR

Tercel Oilfield International U.S.A. LLC d/b/a Rubicon Oilfield International d/b/a Logan Oil Tools ("Rubicon") opposes Impulse Downhole Solutions, Ltd. ("Impulse") Opposed Motion for to Exclude the Testimony of Rubicon's Expert Mr. Vollmar as follows (Doc. No. 57) ("Motion"):

## I.  INTRODUCTION

Mr. Vollmar conducts a thorough analysis of damages under recognized Federal Circuit framework, and repeatedly points out where Impulse's expert fails in her attempt to use a single license executed in a litigation context as justification for a reasonable royalty in this case. Impulse attempts to strike different portions of his testimony but fails each time.

Notable throughout Impulse's motion is the repeated citation to cases that have no similarity to the facts at issue and do not stand for the propositions for which they are presented. As such, Impulse repeatedly reaches the wrong conclusion. Instead, Mr. Vollmar presents a thorough and persuasive analysis of damages far beyond Impulse's theory of simply taking one agreement and using that same rate for the present agreement, and does so in a manner consistent with *Daubert* and the Federal Rules of Evidence.

The Court should deny the motion in its entirety.

## II.  LEGAL STANDARDS

Under the Rules of Evidence if expert testimony will help the trier of fact understand evidence or determine a fact in issue, Rule 702 permits such testimony, as long as (i) the testimony is based upon sufficient facts or data, (ii) the testimony is the product of reliable principles and methods, and (iii) the expert has applied the principles and methods reliably to the facts of the case.

As a preliminary matter, the Court must determine whether the proffered witness qualifies as an expert. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact, rather than for the court. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999).

If the expert is qualified, then the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals* provides the analytical framework for determining the admissibility of expert testimony. 509 U.S. 579 (1993). This role requires "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *Pipitone v. Biomatrix*, Inc., 288 F.3d 239, 244 (5th Cir. 2002) ("In short, expert testimony is admissible only if it is both relevant and reliable.").

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id*. at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004). In applying the *Daubert* test, the proponent of expert testimony has the burden to prove by a

preponderance of the evidence that evidence is reliable (not that it is correct). *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

*Daubert* also emphasized that the inquiry is flexible and the analysis depends on the issue, the witness's expertise, and the subject of the testimony. *Daubert*, 509 U.S. at 593-94; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Micro-Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (2003). Unsound or unscientific methodologies do not pass muster under *Daubert*. However, "[w]hen the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (citing *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). The district court must "approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations omitted). Furthermore, as the Supreme Court has noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. As the authorities cited above reaffirm, "the test for exclusion [of expert opinion] is a strict one." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (internal quotation marks omitted).

### III.   MR. VOLLMAR'S TESTIMONY SHOULD BE ALLOWED

#### A. Mr. Vollmar's use of RoyaltySource for third party licenses does not justify excluding his opinion.

Impulse claims that Mr. Vollmar relies on third party licenses without establishing their comparability to the facts in the case. Motion at 3. Impulse is wrong.

First, it is common for damages experts to refer to licensing databases to review rates in the industry. *See e.g.*, *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488, at *3 (E.D. Tex. Nov. 9, 2016) (using third party databases and noting "there is simply no significance to the fact that an expert finds such comparable licenses from a royalty database"); *Harris Corp. v. Ruckus Wireless, Inc.*, No. 611CV618ORL36KRS, 2013 WL 12155458, at *3 (M.D. Fla. Jan. 16, 2013) ("[E]xperts are permitted to rely upon licensing materials obtained from databases such as RoyaltyStat and RoyaltySource in formulating their opinions.").

Impulse relies on an unreported case to argue reliance on RoyaltySource is not appropriate. *See* Motion at 3 (citing *Chico's Fas, Inc. v. Clair*, No. 2:13-CV-792-FTM-38DN, 2015 WL 3496003 (M.D. Fla. June 3, 2015)). That case differs. There, the licenses relied upon comprised licenses from different fields or were from related entities, both of which were acknowledged to be of little relevance under the facts of that case. *Id*. at *4. Indeed, *PerdiemCo* itself points out that *Chico's Fas* does not stand for the proposition that use of a third party database is improper. *PerdiemCo.*, 2016 WL 6611488 at *3 ("[*Chico's Fas*] merely stand[s] for the uncontroversial proposition that licenses from a royalty database are unreliable *if* those licenses are not related to the technology at issue." (emphasis in original)). Impulse's other case citations are no better. *See* Motion at 4 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010); *Wordtech Sys., Inc v. Integrated Networks Sols.*, Inc., 609 F.3d 1308, 1319 (Fed. Cir. 2010), *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009)). *Lansa* analysis was in regard to the <u>first</u> *Georgia-Pacific* factor, licensing the patent-in-suit, and the expert's analysis was struck because the factor "[b]y its terms . . . considers only past and present licenses to the actual patent and the actual claims in litigation" and the licenses did not meet that obvious prerequisite for consideration in that factor. *Lansa*, 594 F.3d at 870. This is not the present case, where the licenses

are appropriately considered under the fourteenth factor. *Wordtech* is similarly inapplicable because of analysis under the wrong *Georgia-Pacific* factor. 609 F.3d at 1319 (discussing *Georgia-Pacific* factor 1). *Lucent Technologies* involved "vastly different" licenses than what would result in the hypothetical negotiation based on facts inapplicable to any in the present matter (*e.g.*, licenses were to a massive patent portfolio that "protect[ed IBM's] one-time dominance in the personal computer market." No such scenario is suggested here). *Lucent*, 580 F.3d at 1328.

Second, Mr. Vollmar's report shows the methods for searching and using the royalty database to produce relevant agreements in a method that has been approved by other courts. He searched for licenses with parameters relevant to this case: "parameters related to downhole, drilling, and/or flow control tools primarily used in oil and gas." Ex. A, Exp. Rpt. R. Vollmar at ¶35. He selected and requested twenty three that he found potentially relevant. *Id*. Relevance was determined based on a review of the technology listed in the search database. Those tools selected were those that "identified tools, an apparatus, or other device that stimulated and enhanced oil and gas well production." *Id*. This included "rotatable devices, well stimulation tools, directional drilling, mud diverter valves." *Id*. He ensured they were from a relevant timeframe: 2007 and later. *Id*.  Three were finally determined to be instructive. *Id*. When patent information was *not* available within the license agreement, they were excluded. *Id*.

Mr. Vollmar's deliberate and thoughtful technique at winnowing to a relevant set of reports is precisely the technique utilized in a number of cases. To the extent any fault appears in that technique, it goes to the weight and not the admissibility of the opinions. By example, earlier this year the Eastern District of Texas approved of the same technique applied by Mr. Vollmar in *Personalized Media Communications*, described by the expert below:

> [a]s part of my research and analysis of potentially relevant and "customary" licensing and/or profit apportionment practices, my team and I searched a database

5

> for publicly available license agreements and circumstances that might be considered comparable to the license that would result from this hypothetical negotiation. We performed a keyword search of the available license agreements from related technology industries, using search terms based on the names of the parties and accused products and services in this matter, and also a number of relevant terms such as "download", "stream", and "encryption". Our search retrieved over 500 license and other agreements, which we subsequently screened for relevance.... Our screening resulted in a set of four license agreements with sufficient potential utility to warrant further review.

*Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 215CV01366JRGRSP, 2021 WL 662238, at *3 (E.D. Tex. Feb. 20, 2021). Mr. Vollmar's technique is virtually indistinguishable: searching a database using relevant keywords, screening for relevance, finally resulting in a few agreements.

Third, any criticisms of Mr. Vollmar's effectiveness in carrying out his described technique "goes to the weight of the evidence, not its admissibility." *See id*. This is because "[o]rdinarily and in the large majority of cases, the comparability of a license relied upon by a patentee is a question of fact for the jury." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the . . . license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

Fourth, Impulse's scattered excerpts from Mr. Vollmar's testimony do not show his testimony is unreliable. Impulse cites testimony, and underscores and italicizes its argument related to it, that "no one even looked at the patents" of the third-party licenses, implying that there is no basis to determine if the licensed technology is comparable. *See* Motion at 3. But that is a misunderstanding: Mr. Vollmar based his opinion on the description of the technology licensed, "tools, an apparatus, or other device that stimulated and enhanced oil and gas well production . . . rotatable devices, well stimulation tools, directional drilling [etc.]." Ex. A, Exp. Rpt. R. Vollmar at ¶35. He filtered "based upon the description of the patent." Ex. B, Dep. R. Vollmar at 131:6-14. He included descriptions of the technology repeatedly throughout his report. *See* Ex. A, Exp. Rpt.

6

R. Vollmar at Ex. I, final column (citing licenses of "downhole vibration tool," "downhole equipment," "Exclusive patent and technology license [for] US patent application 14/290,597 [Entitled "Subsurface drilling tool"]," "downhole apparatus . . . for the exterior surface cleaning," "Downhole Separator," "Subterranean Rotation-Inducing Device and Method" "production enhancement of hydrocarbon deposits using . . . elastic oscillations" etc.). It is self-evident that licenses for oil and gas apparatuses used downhole and captured in his filtering process have a degree of relevance to the present case.

Impulse's argument misconstrues the evidence. Mr. Vollmar sufficiently linked the licenses to the technology at issue today. His opinion should not be excluded.

### B. Mr. Vollmar correctly opined about the effect of non-infringing alternatives.

Impulse incorrectly argues that Mr. Vollmar's discussion of non-infringing alternatives errs. Motion at 4. Whether an alternative is non-infringing is a question of fact and does not require expert testimony.

Impulse's reliance on *Acceleration Bay* is misplaced. There, the Court found the damages opinion based on cost saving on creating an alternative computer architecture as a non-infringing alternative was unreliable. The alternative was not defined and did not exist. No effort was made to even demonstrate what the alternative architecture would be. There was no principled way to estimate the cost of using that imaginary non-infringing alternative. The Court noted "[t]he Federal Circuit's precedent on cost savings does not, however, support the admissibility of the estimated cost to switch to an undefined alternative that the patentee contends does not exist." *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-CV-00453-RGA, 2019 WL 4194060, at *3 (D. Del. Sept. 4, 2019). The analysis was fanciful, and was "no more reliable or scientific than an estimate of the cost to drive to Shangri-La. . . ." *Id.* at *4.

Here, the question is different: the cost of moving to the other alternatives, which are well defined, is known. And Impulse's own expert acknowledges they would be non-infringing. Whether that would be an acceptable non-infringing alternative is for the jury. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014) (discussing at length reliability of damages models including non-infringing alternatives, and that the "jury is capable of assigning appropriate weight" to the expert testimony on the matter), *overruled on other grounds by Williamson v. Citrix Online*, LLC, 792 F.3d 1339 (Fed. Cir. 2015). The non-infringing alternatives include options such as having a single port, which would necessarily not infringe the limitations requiring a "plurality of ports" and utilizing designs that remain on the market and are fully taught in expired patents. *See* Ex. C, Resp. to Interrog. 9. No expert testimony is required for analysis of those as obviously non-infringing alternatives. *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) (fact finder can analyze "easily understandable [art] without the need for expert explanatory testimony"); *Kyocera Wireless Co. v. President Elecs., Ltd.*, 179 F. App'x 53, 54 (Fed. Cir. 2006).

### C. Mr. Vollmar's analysis of the ▮▮▮▮▮ is correct.

Mr. Vollmar includes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. As a matter of law, his analysis is correct as ▮▮▮▮▮▮▮▮▮. This is a result of Mr. Vollmar's close reading of ▮▮▮▮▮▮▮▮▮. Incredibly, Impulse argues he should ignore the effect of that term and only give credit to terms favorable to a higher royalty rate. *See* Motion at 5. This is precisely the opposite of what the Federal Circuit instructed in performing the analysis, and Impulse's argument only reflects its misunderstanding of its own evidence.



See Ex. D, IDS-0007298 at 2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dep. R. Vollmar at 95:16-23. ▮▮▮▮▮▮▮▮ Ex. E, Dep. T. Lorenson at 20:24-21:8. ▮▮▮▮▮▮▮▮.

Instead of rendering Mr. Vollmar's report unreliable, it does exactly the opposite as ignoring it would be the equivalent of ignoring a license. As a matter of law, Mr. Vollmar is correct▮▮▮▮▮▮▮▮▮▮▮ *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) ("[T]his court and its predecessors have on numerous occasions explained that a non-exclusive patent license is equivalent to a covenant not to sue."). "The difference is only one of form, not substance." *Id*. at 1276. ▮▮▮▮▮▮▮▮▮ Mr. Salters does not appreciate this in her report, and just as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Impulse is wrong.

Impulse fails to provide any authority for its position. It cites *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411 (Fed. Cir. 2018), which is easily distinguishable. The damages award in that involved royalties extending beyond the patent term. That it is quite the opposite of the facts presently at issue. Instead of involving analysis of the "equivalent" of a patent license, it included something that was outside of the term of a patent. Nothing analogous appears here: instead, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a valid patent with a live term. Impulse's conclusion that somehow that effective license is valueless is both unexplained and illogical.

### D. Mr. Vollmar's observation that apportionment between multiple patents does not render his opinion unreliable.

Mr. Vollmar criticizes Ms. Salters for opining that the '584 Patent would be licensed for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A, Exp. Rpt. R. Vollmar at ¶19(b)(ii). Mr. Vollmar evaluates the factual scenarios related to those particular patents, such as the importance of the dates of issuance of the patents, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the similarity of the technology in the patents, the comparability of the terms of the license agreement with one that would be executed in the present case under a *Georgia Pacific* analysis, and observes that any sort of apportionment "if apportioned equally" would be ▮▮. *Id.* at ¶32(c).

This is one step in a number of different techniques used to reach a final reasonable royalty. Notably, his opinion is not that ▮▮ is the reasonable royalty in this case. *See id.* at ¶66. Nor was

his opinion that one should apportion the patents equally in the patent portfolio. Instead, it was one factor among many that went into his analysis, and he observed the results of an even apportionment among two patents *if that was actually agreed upon* as a touchstone in understanding licensing behavior in the field.

████████████████████████████████████████████

████████████████████████████████████████ *See* Motion at 6. Impulse relies on *LaserDynamics* to argue Mr. Vollmar's opinion is "plucked out of thin air." The case has little to do with the analysis performed by Mr. Vollmar. *LaserDynamics* involved the improper use of the entire market value rule of a laptop for infringement of patents involving technology within optical disk drives. The expert opined that the optical disk drive was worth 6% of the entire market value, then "plucked out of thin air" that the patented technology is worth one third of that, or 2% of the total market value, as the final expert reasonable royalty.

The differences are important. First, Mr. Vollmar is making the obvious observation that Ms. Salters' opinion is not credible through a simple observation that a reasonable royalty for one patent alone should not be almost double that of a bundle of that same patent with four others. ████ ██████████████████████████████ it is merely one observation among many that allows Mr. Vollmar to triangulate a range of acceptable royalty rates. Second, even Impulse's incorrect understanding of the report does not justify its exclusion. *Pro rata* apportionment is a common step in a number of patent licensing determinations. By example in standards-essential licensing, RAND (reasonable and non-discriminatory) licensing *requires* analysis *pro rata* within a portfolio. *See, e.g., In re Innovatio IP Ventures, LLC Pat. Litig.*, No. 11 C 9308, 2013 WL 5593609, at *43 (N.D. Ill. Oct. 3, 2013), where the Court found entitlement to damages based on a *pro rata* attribution within a patent portfolio to standards essential patents in 802.11

11

communication protocols. *See also Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *87 (W.D. Wash. Apr. 25, 2013). By another example, "numeric proportionality" of multiple patents within a patent suite was allowed over *Daubert* motion in *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982729, at *4 (D. Del. Mar. 16, 2021). There, the Court noted that it was appropriate that all patents in a suite be treated as having the same final value based on the facts of the case. Here, Mr. Vollmar does not even go that far, but merely observes that any apportionment would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Third, it is important to note that even if an even apportionment was "plucked out of thin air," it would be conservative in favor of Impulse. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Impulse fundamentally misunderstands the discussion that it complains about. The testimony should not be excluded.

IV. **CONCLUSION**

Impulse provides no factual scenario tied to any authority to justify excluding any of the portions of Mr. Vollmar's opinion. The motion should be denied.

PUBLIC VERSION

| | |
|---|---|
| Dated: September 24, 2021 | **PILLSBURY WINTHROP SHAW PITTMAN LLP** |
| | |
| | */s/ Steven P. Tepera* |
| | Brian C. Nash |
| | Texas Bar No. 24051103 |
| | brian.nash@pillsburylaw.com |
| | Steven P. Tepera |
| | Texas Bar No. 24053510 |
| | steven.tepera@pillsburylaw.com |
| | Timothy F. Dewberry |
| | Texas Bar No. 24090074 |
| | tim.dewberry@pillsburylaw.com |
| | 401 Congress Avenue, Suite 1700 |
| | Austin, Texas 78701 |
| | Telephone: (512) 580-9688 |
| | Facsimile: (512) 580-9601 |
| | |
| | ***Counsel for Defendant Tercel Oilfield Products U.S.A., LLC d/b/a Rubicon Oilfield International d/b/a Logan Oil Tools*** |

PUBLIC VERSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served upon all counsel of record via email on September 24, 2021.

*/s/ Steven P. Tepera*
Steven P. Tepera
